# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| LINDA F. HEGEMAN, of York, ) <br> County of York and State of Maine, ) <br> ) <br> PLAINTIFF ) <br> vs. ) <br> ) <br> WOLPOFF & ABRAMSON, LLP, ) <br> BANK OF AMERICA, N.A. ) <br> FIA CARD SERVICES, N.A., ) <br> F/K/A MBNA AMERICA BANK, N.A. ) <br> DEFENDANTS ) | CIVIL ACTION <br> Docket No. 2:07-cv- |

## COMPLAINT

NOW COMES the Plaintiff, Linda F. Hegeman, (hereinafter "Plaintiff"), by and through her counsel James F. Molleur, LLC, and complains against Defendants Wolpoff & Abramson, LLP (hereafter referred to as "Wolpoff," for convenience), Bank of America, N.A., ("Bank,") and FIA Card Services, N.A., ("FIA") as follows:

1. Jurisdiction is pursuant to 15 U.S.C. § 1692 et seq.; venue is appropriate in this District pursuant to 28 U.S.C. § 1408.

## PRELIMINARY STATEMENT

2. Plaintiff is an individual residing in York, County of York and State of Maine.

3. Wolpoff is a Maryland law firm with principal offices in Rockville, Maryland.

4. Bank is a Delaware corporation with principal offices in Charlotte, North Carolina.

5. Upon information and belief, FIA is also a Delaware Corporation with

Principal offices in Charlotte, North Carolina.

## FACTUAL ALLEGATIONS

6.     Prior to 2005, Plaintiff's husband, Lawrence Hegeman opened at least three Bank of America credit card accounts and one MBNA Visa credit card account and listed Plaintiff as an authorized user on the accounts.

7.     Upon information and belief, Plaintiff never signed a contract agreement to be either personally liable on at least one of the Bank of America accounts, or on the MBNA account, or to be subject to binding arbitration concerning the account.

8.     Upon information and belief, prior to March 8, 2005, all Bank of America and MBNA monthly billing statements were addressed only to Lawrence Hegeman. Attached as Exhibit A is a true and accurate copy of a January 2007 Bank of America monthly billing statement for account number 4427100020093527.

9.     Lawrence Hegeman filed a Chapter 7 bankruptcy case, Case Number 05-20308 on March 8, 2005.

10.    Upon information and belief, some time during the pendency of Lawrence Hegeman's bankruptcy, Defendant Bank purchased MBNA, subsequently assigning all MBNA accounts to its wholly owned subsidiary, FIA.

11.    Lawrence Hegeman's bankruptcy was discharged on June 20, 2005.

12.    Shortly before Lawrence Hegeman received his discharge, Defendant Bank began sending the Bank of America and MBNA monthly statements only to Plaintiff and reporting the accounts on Plaintiff's credit reports. Attached as Exhibit B is a true and

accurate copy of Plaintiff's March 10, 2006 Equifax credit report listing the account referenced in Exhibit A as an obligation belonging to Plaintiff.

13. Shortly after June 20, 2005, and within 30 days after receiving the first statement from Bank, Plaintiff mailed a letter dated June 20, 2005 to Bank, disputing her liability for the accounts, requesting documentation proving her liability, and requesting that all future correspondence be directed to her legal counsel. Attached as Exhibit A is a true and accurate copy of the letter Plaintiff mailed to Bank.

14. Upon information and belief, Defendant Wolpoff began contacting Plaintiff in an attempt to collect the balance on the MBNA account in 2005.

15. Upon information and belief, all Defendants placed regular telephone calls to Plaintiff and mailed numerous letters requesting payment on the accounts.

16. On or about March 10, 2006, Plaintiff mailed a second letter to Bank, again disputing her liability for the accounts, requesting documentation evidencing her liability and requesting that future correspondence be directed to her legal counsel. Attached as Exhibit B is a true and accurate copy of the body of the Second letter Plaintiff mailed to Bank.

17. In or around Summer, 2006, Defendants Bank, and/or FIA filed an adversary proceeding with the National Arbitration Forum ("NAF") in the name of MBNA, against Plaintiff.

18. Plaintiff's counsel filed a Response with the National Arbitration Forum, requesting documentary proof in the form of a signed contract indicating that Plaintiff was liable on the MBNA account and/or agreed to binding arbitration.

19. Upon information and belief, Plaintiff's counsel also engaged in repeated conversations with employees of Defendant Wolpoff and Bank in an effort to seek verification of Plaintiff's liability on the accounts.

20. Defendant Wolpoff failed to provide any evidence of Plaintiff's liability to Plaintiff's counsel.

21. Upon information and belief, during the course of one conversation with an attorney at Wolpoff, Plaintiff's counsel was told that Bank had been unable to verify Plaintiff's liability on the MBNA account and that Wolpoff was therefore sending the account back to Bank.

22. Upon information and belief, no Defendant provided a copy of the contract to the National Arbitration Forum. Instead, Bank and/or FIA offered only an affidavit of an officer at MBNA, and one or more copies of monthly billing statements addressed to Plaintiff as evidence of her liability.

23. On or about September 26, 2006, Plaintiff retained her present counsel (hereafter "Attorney," for convenience) for the purpose of determining her liability on accounts and settling those accounts for which her liability had been established.

24. Plaintiff's Attorney contacted Wolpoff on November 20, and November 21, 2006, to request verification that Plaintiff had agreed to be personally liable for the MBNA account.

25. On November 27, 2006, Plaintiff's Attorney spoke with Attorney Ronald Canter, an employee of Wolpoff, and requested verification of Plaintiff's liability on the MBNA account prior to issuing a settlement offer.

26. On November 28, 2006, Plaintiff's Attorney again spoke with Attorney Canter and Attorney Canter promised to obtain proof of Plaintiff's liability and promptly send it to Plaintiff's counsel. Plaintiff's counsel assumed Bank and/or FIA would stay the arbitration prosecution pending the establishment that Plaintiff was subject to arbitration.

27. On January 12, 2007, Plaintiff's Attorney spoke with Attorney Canter, who refused to speak to Plaintiff's Attorney concerning the matter until he received verification that Plaintiff's prior counsel had withdrawn from representing her.

28. On January 26, 2007, Plaintiff's Attorney faxed proof of the withdrawal to Attorney Canter. Upon the repeated request of Plaintiff's Attorney, Attorney Canter agreed to request proof of Plaintiff's liability on the MBNA account.

29. On March 12, 2007, Plaintiff learned that the arbitration proceeding had continued throughout the nearly four months Plaintiff's Attorney had requested proof that Plaintiff was personally liable on the account and thus subject to arbitration.

30. Upon information and belief, Bank and/or FIA received an arbitration award in their favor on or around February 9, 2007, more than two months after Plaintiff's

Attorney issued his first request for documents and at least six months after Plaintiff's counsel filed a Response Requesting verification that Plaintiff had signed a contract rendering her subject to arbitration. Attached as Exhibit C is a true and accurate copy of a letter Plaintiff's counsel received from Defendant on March 12, 2007.

### COUNT I: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT BY DEFENDANT WOLPOFF

31.     Plaintiff re-alleges and incorporates by reference paragraphs 6-30 of this complaint.

32.     Upon information and belief, Wolpoff regularly collects debts alleged to be due another and is therefore a debt collector as defined by 15 U.S.C. § 1692.

33.     Beginning in 2005 and continuing until present, Wolpoff's repeated efforts to collect on the MBNA account balance from Plaintiff and its pursuit of collecting on the arbitration claim on behalf of Bank and/or FIA, despite repeated requests for proof that plaintiff was liable on the account, from both counsel representing Plaintiff and Plaintiff's Attorney, amounted to engaging in a series of unlawful debt collection practices under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et. seq., including, but not limited to:

    a.     contacting Plaintiff directly after learning that Plaintiff was represented by an attorney and learning that attorney's name and address (15 U.S.C. § 1692c(a)(2);

    b.     conduct, the natural consequence of which was to harass, oppress, and/or abuse the Plaintiff in connection with the collection of a debt (15 U.S.C. § 1692d);

  c.  making false representations as to the character, amount, or legal status of a debt (15 U.S.C. § 1692e(2)(a);

  d.  threatening to take action in the National Arbitration Forum, which could not legally be taken (15 U.S.C. § 1692e(5);

  e.  communicating to a person credit information known or which should have been known to be false, including failing to communicate that a disputed debt was disputed (15 U.S.C. § 1692e(8);

  f.  using false representations or deceptive means to attempt to collect a debt (15 U.S.C. § 1692e(10);

  g.  using unfair or unconscionable means to collect a debt for which, upon information and belief, Plaintiff was and is not liable (15 U.S.C. § 1692f).

  34. Plaintiff is entitled to actual damages plus such additional damages as the court may allow not exceeding $1,000 per violation pursuant to 15 U.S.C. § 1692(k).

### COUNT II: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT BY DEFENDANT BANK AND/OR DEFENDANT FIA

  35. Plaintiff re-alleges and incorporates by reference paragraphs 6-30 of this complaint.

  36. Upon information and belief, Bank regularly uses the name FIA to collect its account and MBNA in its pursuit of arbitration actions and therefore uses a name other than its own which would indicate that a third person is collecting or attempting to collect such debts and is therefore a debt collector as defined by 15 U.S.C. § 1692.

7

37. In the alternative, Bank and FIA regularly use the name MBNA in their pursuit of arbitration actions and therefore use a name other than their own which would indicate that a third person is collecting or attempting to collect such debts and are therefore debt collectors as defined by 15 U.S.C. § 1692.

38. Beginning in 2005 and continuing until present, Bank and/or FIA's continued pursuit of an arbitration claim, despite repeated efforts of Plaintiff's counsel and Attorney to request proof that Plaintiff was liable on the account, amounted to engaging in a series of unlawful debt collection practices under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et. seq., including, but not limited to:

    a. conduct, the natural consequence of which was to harass, oppress, and/or abuse the Plaintiff in connection with the collection of a debt (15 U.S.C. § 1692d);

    b. making false representations as to the character, amount, or legal status of a debt (15 U.S.C. § 1692e(2)(a);

    c. threatening to take action in the National Arbitration Forum, which could not legally be taken (15 U.S.C. § 1692e(5);

    d. communicating to a person credit information known or which should have been known to be false, including failing to communicate that a disputed debt was disputed (15 U.S.C. § 1692e(8);

    e. using false representations or deceptive means to attempt to collect a debt (15 U.S.C. § 1692e(10);

    f. using a name other than their true name or names (15 U.S.C. § 1692e (14).

  g. using unfair or unconscionable means to collect a debt for which, upon information and belief, Plaintiff was and is not liable (15 U.S.C. § 1692f).

  39. Plaintiff is entitled to actual damages plus such additional damages as the court may allow not exceeding $1,000 per violation pursuant to 15 U.S.C. § 1692(k).

## COUNT III: VIOLATIONS OF THE MAINE FAIR DEBT COLLECTION PRACTICES ACT BY DEFENDANT WOLPOFF

  40. The Plaintiff realleges and incorporates by reference paragraphs 6-30 of this Complaint.

  41. Upon information and belief, Wolpoff regularly collects debts alleged to be due to others, and is therefore a debt collector as defined by 32 M.R.S.A. § 11002(6).

  42. Beginning in 2005 and continuing until present, Wolpoff's repeated efforts to collect on the MBNA account balance from Plaintiff and its pursuit of collecting on the arbitration claim on behalf of Bank and/or FIA, despite repeated requests for proof that plaintiff was liable on the account, from both counsel representing Plaintiff, and Plaintiff's Attorney, amounted to engaging in a series of unlawful debt collection practices under the Maine Fair Debt Collection Practices Act, including, but not limited to:

  a. contacting Plaintiff directly after learning that Plaintiff was represented by an attorney and learning that attorney's name and address (32 M.R.S.A. § 11012(1)B;

  b. conduct, the natural consequence of which was to harass, oppress, and/or abuse the Plaintiff in connection with the collection of a debt (32 M.R.S.A. § 11013(1);

  c. making false representations as to the character, amount, or legal status of a debt (32 M.R.S.A. § 11013(2)(B)(1);

  d. threatening to take an action in the National Arbitration Forum, which could not legally be taken (32 M.R.S.A. § 11013(2)(E);

  e. communicating to a person credit information known or which should have been known to be false (32 M.R.S.A. § 11013(2)(H);

  f. using false representations or deceptive means to attempt to collect a debt (32 M.R.S.A. § 11013(2)(J);

  g. using unfair or unconscionable means to attempt to collect a debt from Plaintiff, which, upon information and belief, did not belong to Plaintiff (32 M.R.S.A. § 11013(3).

  43. Plaintiff is entitled to actual damages plus such additional damages as the court may allow not exceeding $1,000 per violation pursuant to 32 M.R.S.A. § 11054.

## COUNT IV: VIOLATIONS OF THE MAINE FAIR DEBT COLLECTION PRACTICES ACT BY DEFENDANTS BANK AND/OR FIA

  44. The Plaintiff realleges and incorporates by reference paragraphs 6-30 of this Complaint.

  45. Upon information and belief, Bank regularly uses the name FIA to collect its accounts, and regularly uses the name MBNA in its pursuit of arbitration actions and therefore uses a name other than its own which would indicate that a third person is collecting or attempting to collect such debts and are therefore debt collectors as defined by 32 M.R.S.A. § 11002(6).

  46. In the alternative, upon information and belief, Bank and/or FIA regularly use the name MBNA in their pursuit of arbitration actions and therefore use a name other than

their own which would indicate that a third person is collecting or attempting to collect such debts and are therefore debt collectors as defined by 32 M.R.S.A. § 11002(6).

47.  Beginning in 2005 and continuing until present, Bank, and/or FIA's repeated efforts to collect on the MBNA account balance and other account balances from Plaintiff and their pursuit of the arbitration claim, despite repeated requests for proof that plaintiff was liable on the account, from both counsel representing Plaintiff, and Plaintiff's Attorney, amounted to engaging in a series of unlawful debt collection practices under the Maine Fair Debt Collection Practices Act, including, but not limited to:

a.  contacting Plaintiff directly after learning that Plaintiff was represented by an attorney and learning that attorney's name and address (32 M.R.S.A. § 11012(1)B;

b.  conduct, the natural consequence of which was to harass, oppress, and/or abuse the Plaintiff in connection with the collection of a debt (32 M.R.S.A. § 11013(1);

c.  making false representations as to the character, amount, or legal status of a debt (32 M.R.S.A. § 11013(2)(B)(1);

d.  threatening to take an action in the National Arbitration Forum, which could not legally be taken (32 M.R.S.A. § 11013(2)(E);

e.  communicating to a person credit information known or which should have been known to be false (32 M.R.S.A. § 11013(2)(H);

f.  using false representations or deceptive means to attempt to collect a debt (32 M.R.S.A. § 11013(2)(J);

  g. using a name other than their true name or names (32 M.R.S.A. § 11013(2)(N).

  h. using unfair or unconscionable means to attempt to collect a debt from Plaintiff, which, upon information and belief, did not belong to Plaintiff (32 M.R.S.A. § 11013(3).

  48. Plaintiff is entitled to actual damages plus such additional damages as the court may allow not exceeding $1,000 per violation pursuant to 32 M.R.S.A. § 11054.

### COUNT V: VIOLATIONS OF THE MAINE CONSUMER CREDIT CODE BY DEFENDANTS BANK AND/OR FIA CARD SERVICES

  49. The Plaintiff realleges and incorporates by reference paragraphs 6-30 of this Complaint.

  50. Upon information and belief, Bank and/or FIA have sought to collect multiple debts from Plaintiff for which she either did not co-sign, or did not receive, prior to or contemporaneous with the alleged co-signing, the disclosures required under Section 3-206 of the Maine Consumer Credit Code (9-A M.R.S.A. § 3-206(1).

  51. Upon information and belief, Bank, and/or FIA Disclosed to The NAF, and Plaintiff's credit reporting agencies information concerning the existence of multiple debts known to be disputed by Plaintiff without disclosing that fact, in violation of the Maine Consumer Credit Code (9-A M.R.S.A. § 5-116).

  52. Plaintiff is entitled to damages of not less than $250, nor greater than $1,000 for violations of 9-A M.R.S.A. § 5-116 (9-A M.R.S.A. § 5-201(1))

53. Plaintiff is entitled to the costs of this action, together with reasonable attorney's fees for violations of 9-A M.R.S.A. § 3-206 (9-A M.R.S.A. § 5-201(1)).

## COUNT VI: VIOLATIONS OF THE MAINE FAIR CREDIT REPORTING ACT BY DEFENDANTS BANK AND/OR FIA

54. Plaintiff realleges and incorporates by reference paragraphs 6-30 of this Complaint.

55. Bank and/or FIA is a "person" under the Maine Fair Credit Reporting Act, under 10 M.R.S.A. § 1312(10).

56. Plaintiff is a "consumer" under 10 M.R.S.A. § 1312(2).

57. Bank and/or FIA regularly and in the ordinary course of their business furnish information regarding consumers to credit reporting agencies.

58. Bank and/or FIA violated its/their duty to avoid furnishing information to Plaintiff's credit reports that they knew or had reason to know to be inaccurate, pursuant to 10 M.R.S.A. § 1320-A(1)(A).

59. Bank and/or FIA violated its/their duty to notify each of Plaintiff's credit reporting agencies when it determined information it previously reported was inaccurate or incomplete and to affirmatively provide corrections or additional information, pursuant to 10 M.R.S.A. § 1320-A(2).

60. Bank and/or FIA violated its/their duty to notify each of Plaintiff's credit reporting agencies that Plaintiff disputed her liability on the accounts and to ensure that their

continued reporting reflected those disputes, after they learned that Plaintiff disputed her liability pursuant to 10 M.R.S.A. § 1320-A(3);

61.     Bank and/or FIA is/are liable to Plaintiff for the actual damages Plaintiff suffered, including the pain and suffering resulting from the realization that Defendants had pursued and received an arbitration award against her without ever responding to her requests for verification, plus a sum of three times the actual damages, plus the costs of this action, together with reasonable attorney's fees for Bank and/or FIA's willful and knowing failure to comply with the Maine Fair Credit Reporting Act, pursuant to 10 M.R.S.A. § 1322.

63.     In the alternative, Bank and/or FIA is/are liable to Plaintiff for the actual damages Plaintiff suffered, including the pain and suffering resulting from the realization that Defendants had pursued and received an arbitration award against her without ever responding to her requests for verification, plus such additional damages as the Court may allow of not less than one hundred dollars ($100) for each violation, plus the costs of this action, together with reasonable attorney's fees for Bank and/or FIA's negligent failure to comply with the Maine Fair Credit Reporting Act, pursuant to 10 M.R.S.A. § 1323.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY BANK AND/OR FIA

64.     Plaintiff re-alleges and incorporates by reference paragraphs 6-30 of this complaint.

65. Bank and/or FIA's conduct in continuing to seek collection of multiple accounts, making regular reports to Plaintiff's credit reporting agencies suggesting that Plaintiff had both Bank of America and MBNA accounts in collection, failing to note that Plaintiff had repeatedly disputed her liability on those accounts, and repeatedly ignoring the requests of both her counsel and her Attorney, including the request filed by her counsel in response to a Complaint filed in the National Arbitration Forum, a legally binding private court, to provide verification that Plaintiff owed the debts and/or should be bound by an arbitration proceeding was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community.

66. Bank and/or FIA's actions caused Plaintiff severe emotional distress, especially after she learned that an arbitration award had been entered against her and could be held legally binding, despite her inability to receive any valid evidence of her liability.

67. The emotional distress suffered by Plaintiff was severe so that no reasonable person could be expected to endure it.

68. Bank and/or FIA intentionally or recklessly inflicted Plaintiff's severe emotional distress or was certain or substantially certain that such distress would result from its conduct.

69. Plaintiff is entitled to recover relief for Bank and/or FIA's intentional infliction of emotional distress.

WHEREFORE, Plaintiff prays that this Court sanction Defendants, award such actual damages, including costs, attorneys fees and punitive damages as are appropriate, and grant such further injunctive or other relief as this Court deems just and reasonable.

Dated at Saco, Maine, this 3rd day April, 2007.

                                JAMES F. MOLLEUR, LLC

By: */s/ James F. Molleur*_____
     James F. Molleur, Esq.

By: */s/ J. Scott Logan*_____
     J. Scott Logan, Esq.

     Counsel for Plaintiff
     P.O. Box 619, 209 Main St., Suite 104
     Saco, ME  04072-0619
     (207) 283-3777
     jim@molleurlaw.com
     scott@molleurlaw.com